Good morning, your honors. My name is Ethan Ballo, and this morning I speak for Kenneth Kyle. I'm going to watch my clock, and I'm going to do my best to reserve two minutes for rebuttal. With the time we have this morning, I'm going to focus on the Rule 11 challenge, but of course I'm prepared to entertain any questions the bench may have about our remaining claims for relief. At the outset, I'll note the obvious. This was a difficult case. Before the district court, my colleague, Mr. Mardigan, exercised tremendous restraint on behalf of the United States, recognizing that the emotional pull, the visceral effect these allegations would have on any human being would be great. Justice Kagan Stop, counsel, for a moment. I'm certainly interested in more discussion on the Rule 11 violation, but I'm also curious about the calculation of the guideline range in the plea agreement itself that was accepted. Mr. Mardigan The second plea agreement. Justice Kagan Yes, that is one of the errors, I think, that counsel suggests that we should consider here. Mr. Mardigan That is one of the errors, yes, Your Honor. Justice Kagan Okay. But it's not clear from the record how did the parties arrive at the guideline calculation, and the judge sentenced within that guideline calculation as a part of the plea agreement. Do you have a response to that? Mr. Mardigan Of course, Your Honor. I was in trial counsel, but I can run through it basically quickly. There was an original plea agreement with the government that did not use the cross-reference under 2G. It recognized that if you look at the conduct at issue in the PSR, paragraphs 17 to 26, it's a difficult argument to make, but it's the honest one. This was a case where the focus of the defendant was the sexual abuse of an infant. It wasn't about making porn. The purpose wasn't to make video depictions. The purpose was the serial abuse of an infant, which is why he was subject to a 30-year mandatory sentence, and the government recognized that. They presented the plea agreement to trial counsel, and they included two adjustments in there that would ultimately fall under the cross-reference. That's a vulnerable victim and use of a computer. When the district judge rejected the original C1C plea agreement, at that point, the probation officer, Charlie Mabee, had disclosed a report which said don't use 2A1.3. Use the cross-reference because he believed it was for the purpose of making visual. It wasn't a sexual abuse case. It was a video case, and at the original plea rejection, the government asked Mr. Mardigan whether he concurred. He did concur with that. At this point, the parties were urging a 360-month sentence, which was still above guidelines. When the judge rejected that plea agreement and sent them back, after the judge said, I want this case to go to trial so I may give you a life sentence, when he preannounced the effect of what would be the penal consequences of not reaching a deal, Mr. Carr found himself in a terribly difficult position. He had no leverage with the government anymore. So how did they calculate that guideline? They now included a cross-reference where they made a determination, which we contend is plain error, that the purpose of this case, the underlying motivation was to make photographs, as opposed to that being an incidental effect of the abuse, which, again, we think the PSR is plain about that. And they also included a use of a computer-enhanced mechanism. Well, there is some suggestion that he was planning to circulate this stuff. I mean, that's more than a suggestion, that he was preparing to circulate this stuff. Well, I think that overstates it. And I think, Your Honor, with all due respect to Judge Burson, I think the evidence is he took photographs, he gave them to the girl, the child's mother, and he also provided them to one other person, this Thelma and Louise character. But he seemed to have formatted it in some way or labeled it in some way that looked as if he was getting ready to circulate it. I would disagree with that as well, Your Honor. How he maintained it on his computer was he blacked out the eyes of the mother and the child. I would note that in multiple searches the government seized every piece of electronic media this man possessed, hard drives, multiple computers, multiple laptops, cell phones. They had all the evidence of everything he did with every video. As we know from the other counts that were dismissed, they reviewed a truckload of pornography in various forms, from bestiality to pedophilia and a fair spectrum in between. There was no evidence that he was giving this out or  I'm going to go back to the rule of definition. Thank you. But the one point I want to make is it has to be for the purpose. It's the animus of the crime that determines the cross-reference. And the use of the computer, the one piece I'll say for you, Judge Marshall, is the government's defense of the use of the computer enhancement is that he gave her a cell phone or he paid for her cell phone and used the cell phone. Well, that's not use of a computer. But thank you for the Rule 11 for turning back to my point, Your Honor. Rule 11 is a bright line rule. It's about judicial integrity. It's about protecting a defendant from feelings of coercion. And three of the So the question here is, I mean, it's sort of a nice, nice in the other sense of the word question. The judge at the time he made these statements about what he would do, that he would go to trial. I mean, from all appearances, the judge certainly knew that they were negotiating at that point. Yes. And he should have certainly had reason to know that his statement about what would happen at trial would have some impact on that. But there's no direct way in which the judge said anything about wanting the case not to go to trial or wanting the plea to be agreement to be reached. Now, does that matter or could you give me any case law in which it didn't matter? I don't think it matters. I think that's an excellent point, which puts your finger on it. Let me give two examples. I'll take the benign Rule 11 violation cases. I'll take a Kano Varela out of the Tenth Circuit, which the government corrected as a Tenth Circuit case. I'll take Bruce out of this circuit, the Seminole case. And I'll take the case in front of the Supreme Court, which will be decided either tomorrow or come down the next two Mondays. The Eleventh Circuit case. Yes, exactly, Your Honor. And those are benign cases. These are cases where the defense attorney wants the guy to plead guilty. It's crazy to go to trial. He's going to go down. And the judge wants to help him along. So Bruce, it's Judge Gillum, God rest his soul, out of the Southern District saying, the government's offering you 42 months on a life cap case. You've got to think about that. And those are pretty clear. And those are benign cases. Everyone's trying to help this defendant see the light. You get Anderson out of this circuit, which comes on Bruce, which I'll say is malignant or maligned, where the judge is saying, after a trial setting in this case, I will only accept a plea to all counts. Now, in that case, this Court finds it's more coercive. And the commonality, and I think I would point the Court to Kano Varela, which has a really good point of identifying the Fourth, Fifth, Eleventh, and Ninth Circuits as cases which recognize informing a defendant that the consequences of going to trial will be greater is, quote, inherently coercive. And that's what we have here. By informing Mr. Kyle... Violation of Rule 11? Yes, absolutely. And an inherently coercive one. And here, when you tell Mr. Kyle, even though the judge wasn't saying, I want to, I think you should make a deal because I'm going to give you a life sentence, the judge acted the opposite. I want you to go to trial so I can give you a life sentence. At that point, Mr. Kyle, understanding the pre-announced sentence has no leverage to negotiate or limited leverage, and now has any incentive to accept a deal, even the most illusory deal where he has. Well, to back up for a minute... Yes, Your Honor. Is a judge telling the parties in advance what sentence he's going to give if, after trial, is that an independent problem, leaving aside the effect on, on... It's an independent violation of Rule 11. Rule 11 says a judge... But what about the invitation? So you discussed that in the brief, too, that counsel actually asked the judge, could we have some guidance here, what would your sentence likely be if... Yes and no. Can I take that in two parts? Judge Marshall will take Judge Berzon's question first. Rule 11, a district judge may not announce his or her intended sentence unless and until a plea agreement is announced in open court. I'll bring that to Frank, which is the invitation case. What if I ask, just one minute, and then we'll get back to the other question, which is important as well. Thank you. If, suppose the case had gone to trial and he had imposed a life sentence, would that have been challengeable? No, but we'd have the Great Fourth Amendment motion on the cell phone, which Codderman was really going to help us with. No, no, no. I'm asking you something else. Okay. I'm sorry. If a judge announces a sentence in advance, before a trial, and then gives that sentence after the trial, is that a problem in itself? Yes. At the time any judge pre-announces a sentence, I think the lawyer's obligation is to object and say, I want a new judge, because you can't do that. It's the whole dynamic, the judicial integrity, and Bruce speaks to this directly, is thrown off. And we have... Even when there is no plea agreement. Even when there is no plea agreement, the judge doesn't... And you view that as a Rule 11 violation. Absolutely, Your Honor. But go back to the invitations, because Frank is going to be a good segue, and I'm going to try to sit down and squeeze a minute for rebuttal. Frank, I don't think one is a fact, we have an invitation, because the request that Your Honor notes happens in October of 2011. The judge, learned judge, says, no, I can't give you guidance. Rule 11 prohibits me. So the judge identifies the relevant rule and applies the relevant rule. Now, in order for him to just go to trial, he sets it for March 26th. This is going to be ER 40. He says, March 26th, how do you think, how long is it going to take Mr. Gardner? Two weeks, very well. Is that acceptable to you Mr. Bigelizin? That will work, Your Honor. The week of April 2nd will also work. Well, I would say April 2nd is too long, I don't want to exclude time. Boom, we set a date. Actually, he sets it for April 2nd. Then he says, I'm not going to exclude time, I want the case to go to trial, if not, we'll deal with it that way. This is page 42 of the ERs. So anything you'd like to say about that, Mr. Bigelizin? Bigelizin says, yeah, well, I'm still going to work for an actuary to get to the court and actuary. And the judge says, well, that's not helpful because I'm going to give the guy a life sentence. So that's not an invitation. He's not answering the question from October. He said he couldn't answer that question in October. He's volunteering that he's going to whack the guy for life at the end of trial. And that affected this case. I'm going to reserve the rest of my time and ask for a minute if the court would let me. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. Owen Mardekin for the United States. There was no Rule 11 violation in this case for the reason that this Court should be guided by its precedent in the Frank case. What the appellant just argued for, as he argues for in his brief, is a rule that any preannouncement of the sentence is per se a Rule 11 violation. Well, is it? It is not, Your Honor. Leaving aside the question of the plea agreement. Exactly. There are cases when it might be, and there are cases when it isn't. And that's why Frank Well, if there had been a conviction in this case and then he imposed the life sentence, would that have been challenged from the ground that he had prejudged the sentence? No, Your Honor. I think it's not for a couple of reasons. The first is that he's talking about a life sentence. He's talking about the max, as the judge did in Frank. And what the Court recognized in Frank is He said he was going to oppose it. He didn't say this is the max. He said I want to give a life sentence. Which is exactly what the district court said in Frank. And what the Court says is when he said he was going to oppose a life sentence, it didn't matter to Frank. It couldn't have affected the plea negotiations because Frank could have looked at a life sentence either way. He could have gone to trial, lost, and gotten a life sentence. He could have pled guilty and had the judge impose a life sentence anyway. In that case, it was a B agreement. In this case, it's a C agreement, but there's no effective distinction because the judge is the ultimate arbiter. If the judge had decided, and this is taking all the 3553A factors into account You're not really answering my initial question. I'm sorry. Is it appropriate for a judge, is it a Rule 11 violation in itself for a judge to announce the sentence he's going to give after a trial? It is not. Because Rule 11 looks at whether the judge is participating in plea negotiations. Well, but he's certainly affecting them. And affecting them in a very, very substantive way. Once you know what the baseline is, then you may be negotiating over other things. You may be negotiating over whether the government's going to recommend some kind of treatment program or assignment to a minimum security facility as opposed to a maximum security facility. If you know what the judge is going to do, it puts an enormous constraint on what the negotiations are. It's a thumb on the scale. I respectfully disagree that it affects negotiations in this posture, Your Honor. Doesn't it influence the defendant's decision as to whether he's going to plea bargain now as opposed to going to trial? It doesn't in this case because the defendant had always wanted to plead guilty. The defendant had announced to the court, frankly — This is what it sets up. If he can get from the government anything, anything less than a life sentence, he would go for it. Well, Your Honor, the question is not what the government would do, because the government had already agreed that a 30-year sentence in the initial agreement was a reasonable one. The government doesn't have the power to suggest a sentence that's contrary to what  But what they have to recommend because of what the judge said is essentially a functional life sentence. They know if they — so it is as if the judge came in and said, if you — it's not even as if. He basically said, if you come in with anything where this guy is going to be walking the streets in his lifetime as a practical matter, I'm not going for it. Well, I respectfully disagree that that's what the court said. The court said he was going to impose a life sentence. I agree that is absolutely what the district court said. And I think that a life sentence, not a effective — But didn't he also say because as long as this young woman, which makes perfect sense, but as long as this young woman is alive, him being on the streets is so detrimental that I — no way he's going to — Yes. And that's certainly — that's the reason for the judge's sentence. But he, at that point, was clearly saying he was going to impose a life sentence, not an effective life sentence, because given that Mr. Kyle's age, he was about 50 years old at that point, anything from the minimum of 30 years to anything below life is really potentially effectively a life sentence. But the judge didn't impose, let's say, a 60-year sentence? Is that a possibility? He could have imposed it. He could have imposed anything less than life up to and including life. He could have said, I'm going to give you a 100-year sentence, knowing that you're going to die in jail. That would be an effective life sentence, even if he didn't condemn him to remain in jail until he died. He could have done that. And I think that the crucial distinction here is what the judge said at that February conference, because had the judge said, I'm rejecting your 30-year agreement, but what I really want is a 40-year agreement. So why don't you go back and see if you can give me something around 40 years, and then maybe we'll be in business. That would have been a problem. Then that would have been a violation of Rule 11. It would clearly be a violation of Rule 11, Your Honor, under Bruce or Frank. But Frank recognizes something particular about this judge's remark that he would have imposed a life sentence or that he would impose a life sentence if the defendant didn't plead guilty, which is that at that point, the maximum sentence doesn't affect the party's negotiations. Because at that point, the defendant knows, and this is on page 903 of the Frank decision, the judge did not threaten anything if Frank did not plead or promise anything if he did. Frank was still exposed to life whether he took the deal or not, meaning that he could have ---- The difference was between a definite life sentence and the possibility that they could convince him for something else if they had a united front. Well, in ---- But he said what the judge said. It may be whether they convinced the court of something different. I'm not prohibiting you from coming to the court with another agreement. Yes. If that's what you choose and the defendant chooses and the government agrees, then please do so and have your data. So there was a discussion of the plea possibility right in the same context. Well, what the Court does and what makes this case unlike Anderson, where the Court simply tells the parties, I'm not going to consider a plea agreement, the Court tells the parties, bring me a plea agreement. I think the Court leaves the door open to plea negotiations, but the Court certainly doesn't say, and I don't think anyone could argue, that the Court says, I want you to plead guilty or you should really think about it. The only way you're not getting a life sentence is if you come to an agreement with the government and talk to me and persuade me together. That's essentially what he said. Well, I – it's that it's not actually what he said, Your Honor, which is I'll consider any agreement. He's – at that point, he's effectively agnostic as to whether the parties come to him with an agreement or not. He says he'll consider it, which is – which is properly what he should do. But this is the sequence where he's talking. All right. First he says this thing about I'm going to give you a life sentence. And this man is never going to get – the Court's view is this man is never going to get out of jail, period. And I don't want the actuary. But I would certainly be willing to – right in the same paragraph. That's my current view. But I would certainly be willing to entertain you her right to come in with any agreement you wish to and the Court will evaluate it on an individualized basis in the same sentence. Yes. So he wasn't saying you can come in, you know, after the trial, maybe I'll change my mind. He didn't say that. He said if you come in with an agreement, maybe I'll change my mind. Yes. Which is what he's supposed to do after he's rejected a C agreement, after the district court rejects an agreement. Also what he's supposed to do after – during and after a trial. He's not supposed to make up his mind before the trial as to what the sentence is going to be after the trial. Exactly. But he never said maybe after the trial I'll be different. He only said maybe after an agreement I'll be different. But, Your Honor, the posture is different here because he's already – he's already gotten the PSR. He's already gotten the sentencing memos. He's already read the – And Will's got a motion to suppress. Yes. So it has the benefit of a lot of the evidence that would be offered. He is in the posture where he has to make a judgment because he has to decide whether to accept the party's plea or not. At that point he didn't. Well, at the time that the parties show up for the sentencing hearing at which he rejects the 30-year plea, the judge has to have made a judgment about whether he's going to – Does he have to explain himself at that point? He has to explain whether – he doesn't have to say I'm rejecting this because I don't think it's – I don't think the sentence is long enough. Can the judge say that? He can. I'm going to reject this because I don't think justice is being done to the people of the United States because I don't think the sentence is long enough. Yes. Is that a Rule 11 violation? No. It happens all the time, Your Honor. The judge is supposed to – the judge can reject a C agreement in the public interest and the judge can say – But the complaint, as I understand it, at the time when the assertion is that he vowed Correct. Later at the status conference. Exactly. But my point, Your Honor, is that any time after that hearing, the judge isn't prejudging the case because he has necessarily judged it. The guilty plea has happened. The sentencing material has come in. He's weighed the 3553A factors. He is at the point where he has had to exercise judgment in the case. Let's change the subject a little bit. I'm sorry. There was this statement later, which I think was at the sentencing hearing, where he says, I hope you don't survive in prison. I mean, I tend to think that that was maybe a transcription error, but – i.e., the difference between don't survive prison and don't survive in prison, the implication of the second meaning, I hope somebody kills you. But is there – do we know anything more about that? Do you think that's enough of a reason to say that's biased? Well, what we know, and why I don't think the Court should take the absolute most malignant or malign interpretation of that statement, is that at that point, the parties had been negotiating about whether they could get an effective life sentence passed the judge. The defendant wanted a sentence that was perhaps an effective life sentence, but that gave him some chance of getting out. The judge understood that. This was all out in the open. So I think the judge's comment was simply an outgrowth of that whole discussion about whether he was getting an effective life sentence versus a life sentence. I hope you don't survive prison is what he meant. It's what he said. And I think that there are ways to interpret that statement. The final question, and I know you're out of time, is about the proffer agreement. Yes. Was there a breach of the proffer agreement? And if so, how does one enforce that? There was a breach of the proffer agreement. I don't think there was a breach of the proffer agreement. I think there was an evidence in the case that the government could not use that evidence. In absolutely the agent made a mistake by submitting that information. So then what's the standard of review and is prejudice required? I think there has to be, first of all, it typically would be enforced evidentiary, in an evidentiary way, which is that if the case went to trial, the government could not use that evidence because they had acquired it and then misused it before. In this case, there is no prejudice because the court already had that information from another source. So there's no way the court could have been tainted by what was said. It's unfortunate that that breach happened. What exactly was the information and what was the other source? The other source were some e-mails from the defendant to this other sex offender where the defendant admits that he sent this picture. So the judge could not have been tainted, as in other potential circumstances where the judge finds out something that he or she shouldn't know. Okay. So what do we do with it? Do you admit that it's a breach? Yes. I don't think anything is done in this case because there's no harm and there's no effect on the plea agreement. I think the entire record shows that the government forcefully advocated for this plea agreement. This is not a case where the government spoke out of two sides of its mouth and said, you know, oh, we recommend this, but, Your Honor, are you against it? But that's not the issue. The problem is, leaving aside the harmlessness question, if this judge obviously was to some degree influenced in his overall view of the case by the fact that, in fact, somebody else had seen this stuff and what was said in it. And there was some, this awful stuff about I want to kill babies or whatever, wasn't that from the proffer? It was not, Your Honor. It was not? That was not. Those were from e-mails from the defendants that were. And the judge, as I said, already knew this information about the e-mail being sent, the specific one, actually. All right. Thank you very much. Thank you. Thank you for the expertise. One final question. What about the argument that the government breached the plea agreement by that letter that was sent to the judge before the second plea agreement was presented, the letter indicating to the judge that I'm not arguing for a sentence less than life? Well, those are. Or anybody, hard to believe that anybody would argue for a sentence less than life? Those are the closing words. But I think if the court reads that entire letter, there is no way anyone could reasonably believe that the government was doing anything other than very forcefully advocating for the deal and trying to convince the judge. Saying it was effectively life. Yes. Which is some comfort to that judge. So it was a reason for advocating. Okay. Very much. Thank you so much, Your Honor. I'll give you one minute in rebuttal. Thank you for your indulgence, Your Honor. I'll be quick. Frank is distinguishable for the obvious reason that Frank had a plea agreement before the judge's comment was invited and responded to. The parties had an agreement. The judge in Frank and the court basis, the fundamental holding of Frank is, there couldn't have been judicial participation of plea negotiations by the comment in   It's just that he was not looking at the door, essentially. Right. But the agreement was already done. In this case, when he gave the news, I'm giving you life, but you can still come back with a deal that maybe is less than life, there is no deal. We had no ability, Mr. Kyle's ability to negotiate with Mr. Mardigan went to naught. How do we know that? Because Mr. Mardigan was arguing for 30 years until that happened. 30 years was enough. Well, he had no choice at that point. I mean, one way of looking at the record is that it wasn't that what made. There were other options. What took away the leverage was the rejection of the first plea agreement. And then the announcement of what would be there. What took away the leverage was knowing what it would be like, having understood what the judge wanted as opposed to being in the dark where they should have been. Mr. Kyle also had other options, either pursuing a conditional plea. If Mr. Judge White really wanted to have this trial sitting on his hands, so he could then, if the government would give him a conditional plea, to litigate a very strong motion that would have not gotten rid of any of the child porn charges, but most certainly would have gotten rid of these charges. There were other options. And those options were affected to Mr. Kyle's detriment by the preannouncement. I quote from Bruce when the government says this wasn't a breach. This is Ninth Circuit precedent. The district court, quote, should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of a guilty or conviction or submission to him of a plea agreement. You can't preannounce your sentences.  That's black letter. Thank you very much. Can I make one point, if I may, Your Honor, and beg for your indulgence? Fifteen seconds. Thank you. On the Rule 11 issue for the breach, one, under Gonzales-Melcore, for the Rule 11 issue, we don't need to rely on breach. But as far as what you do with the government's breach of the proffer and plea agreement, and I thank Judge Marshall for pointing out the second point, we're using it defensively. It's not a claim for relief. We're saying they can't enforce their waiver because they're in breach first. So the Court needs to do nothing except reach the merits of the claims you presented. I thank Your Honor.  Thank you very much. Thank you to both parties. The case of United States v. Kyle is submitted, and we will take a short break.
judges: Marshall, Berzon, Bybee